**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ava Rose, | No. CV-21-00775-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Dignity Health, et al., | |
| Defendants. | |

Pending before the Court is Defendant Dignity Health's ("Defendant") Motion for Summary Judgment ("Motion," Doc. 95). The Court now rules on the Motion.

I.     **BACKGROUND**

**A. Procedural Posture**

On November 21, 2022, Defendant filed the pending Motion. (Doc. 95). Plaintiff filed a timely Response (Doc. 97) on December 21, 2022. Defendant then filed a timely Reply on January 12, 2023. (Doc. 100).

Plaintiff's operative Complaint asserts four claims against Defendant: (1) sex/gender discrimination under Title VII of the Civil Rights Act of 1964, (2) libel per se, (3) tortious interference with contract, and (4) intentional interference with prospective economic relations. (*See generally* Doc. 12).

**B. Facts**

Plaintiff Ava Rose ("Plaintiff") brought this action against defendant Dignity Health ("Defendant"). (Doc. 12 at 1). The parties dispute whether Plaintiff was an employee or

independent contractor of Defendant's. (*See* Part IV.A.i., *infra*). The following facts are either undisputed or recounted in the light most favorable to the non-moving party. Any fact asserted by one party but left unaddressed by the other party will be considered undisputed for the purposes of the motion.[1] *See* Fed. R. Civ. P. 56(e)(2). The Court addresses evidentiary objections in Part III.A., *infra*.

Plaintiff is a medical doctor and transgender woman. (Doc. 95 at 1).  On October 20, 2017, Plaintiff was hired by Pioneer Hospitalists, LLC ("Pioneer"), an entity with which Defendant contracts for hospital staffing, to provide medical services at two of Defendant's hospitals. (Doc. 95 at 2; Doc. 97 at 2). In December 2017, Plaintiff self-reported use of unprescribed controlled substance medications to the Arizona Medical Board ("AMB"); she subsequently entered an agreement ("AMB Agreement") which prohibited her from taking any drugs unless legitimately prescribed and prior approved by her Physician Health Program ("PHP") Contractor. (Doc. 95 at 2; Doc. 95-1 at 47, 49–51).

Defendant granted Plaintiff's first one-year appointment, conditioned on Plaintiff's compliance with the AMB Agreement, in May 2018. (Doc. 95 at 2). On October 23, the AMB issued Plaintiff a letter of reprimand and placed her on a new probationary period of five years, retroactive to February 27, 2018. (Doc 95-1 at 49).

On November 29, 2018, Plaintiff underwent breast augmentation surgery, for which she was prescribed Percocet. (Doc. 95 at 3; Doc. 97 at 2). She returned to work on December 12, 2018, presenting as male. (Doc. 97 at 2). On December 15, 2018, in front of at least one other nurse, a male employee of Defendant "asked detailed questions regarding her breast augmentation and Plaintiff repeatedly asked him to stop." (Doc. 97 at 3).

Also on December 15, nursing staff, through a nurse supervisor, reported to Vice President of Medical Affairs Dr. Yagnesh Patel ("Dr. Patel") that Plaintiff was behaving erratically, specifically alleging the following: (1) Plaintiff was clumsy and knocked down objects at the desk; (2) Plaintiff became extremely frustrated with the computer system and

---

[1] The Court also notes that where a fact was disputed as between Defendant's Motion and Plaintiff's Response, and the Court's own examination confirmed a particular set of facts as undisputed in the record (i.e., there is evidence of only one version of the fact in the record), the Court treated the fact as undisputed.

was not able to figure out how to change the default printer, which Plaintiff had easily done before, (3) Plaintiff refused to explain a decision to discharge a patient with an elevated lactic acid and increasing white blood cell count ("WBC"); and (4) Plaintiff ordered a high dose of Lantus insulin on a patient and became confused and could not explain the decision when a nurse asked for clarification. (Doc. 95-1 at 136). Plaintiff contests the veracity of these allegations. (*See generally* Doc. 97).

Upon receiving the reports, Dr. Patel then spoke with Plaintiff over the phone, and Plaintiff stated that she had taken Percocet the night before. (Doc. 95-1 at 69). Dr. Patel asked Plaintiff to take a Lyft home, which she did, and Dr. Patel placed Plaintiff on a precautionary administrative suspension pending review of the situation. (Doc. 95 at 4; Doc. 97 at 3).

On December 18, Plaintiff and Dr. Patel met to discuss the allegations, which Plaintiff disputed, asserting that she had taken no medication past 7 p.m. the night before December 15. (Doc. 95 at 4; Doc. 97 at 3). Plaintiff also told Dr. Patel that nurses were discriminating against her, to which Dr. Patel replied that he would not investigate her discrimination claims. (Doc. 97 at 3). That same day, Dr. Patel submitted a complaint to the AMB ("AMB complaint") reporting the incident, and he later testified that he did so because he believed it was his duty to report in light of Plaintiff's probation conditions. (Doc. 95 at 4). The AMB complaint contained each of the allegations reported to Dr. Patel listed above; it also included that Plaintiff appeared to be under the influence of drugs. (*Id.* at 4–5).[2] Plaintiff received a copy and saw the contents of the AMB complaint within a few days after it was filed. (Doc. 95 at 5).[3]

On December 21, 2018, Plaintiff's PHP Contractor submitted a complaint to the AMB, which alleged that Plaintiff had been out of compliance with her monitoring duties, had not responded to requests to communicate with the PHP office, and had only recently

---

[2] The allegations contained in the AMB complaint form the basis of Plaintiff's libel per se and tortious interference claims.

[3] Plaintiff's operative complaint (Doc. 12) asserts that she was not made aware of the contents of the AMB complaint until a much later date. However, Plaintiff's deposition testimony establishes that she did see the complaint in December 2018. (*See* Doc. 95-1 at 77, 79).

provided the PHP office with information about her prescriptions—after Defendant's AMB complaint had been filed. (Doc. 95-1 at 151). The Contractor ultimately concluded that Plaintiff was not considered safe to practice medicine at that time. (*Id.*). Citing only her own declaration for support, Plaintiff alleges that her PHP Contractor did know about, and approve, her Percocet prescription in advance but has since denied that she approved the prescription. (Doc. 97 at 4). Plaintiff additionally attributes missing her mandatory check-in to confusion as to "when monitoring would resume following her time off." (*Id.*).

On December 27, 2018, Plaintiff and the AMB entered into a new interim consent agreement in which Plaintiff was prohibited from practicing medicine until she applied for and received permission to do so. (Doc. 95-1 at 159). A May 2019 independent investigation by an AMB medical consultant states that (1) Plaintiff may not have done every act as alleged in the AMB complaint and (2) Plaintiff knowingly deviated from the parameters set up by the PHP. (Doc. 95-1 at 166).

On April 11, 2019, Plaintiff was permitted to practice medicine again. (Doc. 95 at 6; Doc. 97 at 4). She began her application for reappointment, which she completed and submitted to Dignity Health in June 2019. (Doc. 95 at 6).

On April 30, 2019, an unrelated individual submitted a complaint to the AMB for unrelated conduct by Plaintiff, in which the individual alleged that Plaintiff asked her patient to purchase "whippets" to bring to Plaintiff's parties (Doc. 95 at 6). Plaintiff disputes this allegation, testifying that said patient was her friend prior to being her patient. (Doc. 95-1 at 99).

On September 23, 2019, Defendant granted Plaintiff an additional one-year appointment to its medical staff; Defendant asserts that the processing time for Plaintiff's application was typical of all applications for staff membership. (Doc. 95 at 6). Plaintiff alleges that when Defendant reappointed her, Defendant restricted her from working nights, "which interfered with her ability to admit patients and perform her duties because Pioneer required Plaintiff to have unrestricted privileges." (Doc. 97 at 4). Thus, Plaintiff alleges, Plaintiff was not permitted to return to work for Defendant. (Doc. 97 at 4).

1        In March and April 2020, Plaintiff requested Pioneer to put her back on the work

2 schedule, which Pioneer declined to do. (Doc. 95 at 6–7). Offering just Defendant's AMB

3 complaint as evidence, Plaintiff testified that she believes Defendant gave some direction

4 to Pioneer not to bring her back to work. (Doc. 95-1 at 93–94).

5        In June 2020, Plaintiff started the process to apply for reappointment to work at

6 Defendant's hospitals for a third one-year period. (Doc. 95 at 7). Defendant alleges that

7 Plaintiff failed to submit the required proof of completion of continuing medical education

8 ("CME") and thus never completed her application. (*Id.* at 8). Plaintiff believes, but does

9 not offer evidence, that Defendant caused Plaintiff to be unable to submit a fully complete

10 application. (Doc. 95-1 at 106). Defendant considered Plaintiff's application withdrawn

11 and informed Plaintiff that she could reapply for reinstatement, which Plaintiff did not do.

12 (Doc. 95 at 8). Plaintiff filed a discrimination claim with the U.S. Equal Employment

13 Opportunity Commission ("EEOC") on December 23, 2020. She filed her first complaint

14 in this action on May 3, 2021. (Doc. 1).

## II.    LEGAL STANDARD

### A. Summary Judgment

17        Summary judgment is appropriate when "there is no genuine dispute as to any

18 material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

19 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that

20 assertion by . . . citing to particular parts of materials in the record, including depositions,

21 documents, electronically stored information, affidavits, or declarations, stipulations . . .

22 admissions, interrogatory answers, or other materials," or by "showing that materials cited

23 do not establish the absence or presence of a genuine dispute, or that an adverse party

24 cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(A), (B). Thus,

25 summary judgment is mandated "against a party who fails to make a showing sufficient to

26 establish the existence of an element essential to that party's case, and on which that party

27 will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

28        Initially, the movant bears the burden of demonstrating to the Court the basis for the

1   motion and the elements of the cause of action upon which the non-movant will be unable
2   to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-
3   movant to establish the existence of material fact. *Id.*

4       A material fact is any factual issue that may affect the outcome of the case under
5   the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
6   The non-movant "must do more than simply show that there is some metaphysical doubt
7   as to the material facts" by "com[ing] forward with 'specific facts showing that there is a
8   genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,
9   586–87 (1986) (quoting Fed. R. Civ. P. 56(e)). A dispute about a fact is "genuine" if the
10  evidence is such that a reasonable jury could return a verdict for the non-moving party.
11  *Liberty Lobby, Inc.*, 477 U.S. at 248. The non-movant's bare assertions, standing alone, are
12  insufficient to create a material issue of fact and defeat a motion for summary judgment.
13  *Id.* at 247–48. However, in the summary judgment context, the Court construes all disputed
14  facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d
15  1072, 1075 (9th Cir. 2004).

16      At the summary judgment stage, the Court's role is to determine whether there is a
17  genuine issue available for trial. There is no issue for trial unless there is sufficient evidence
18  in favor of the non-moving party for a jury to return a verdict for the non-moving party.
19  *Liberty Lobby, Inc.*, 477 U.S. at 249–50. "If the evidence is merely colorable, or is not
20  significantly probative, summary judgment may be granted." *Id.* (citations omitted).

21      **B.  Admissibility of Evidence at the Summary Judgment Stage**

22      With respect to the non-movan''s evidence offered in opposition to a motion for
23  summary judgment, the Ninth Circuit has stated that the proper inquiry is not the
24  admissibility of the evidence's form, but rather whether the contents of the evidence are
25  admissible. *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) (holding that, at
26  summary judgment, the district court should consider unsworn, inadmissible hearsay
27  statements written by the plaintiff in a diary about her diabetes symptoms to support an
28  ADA discrimination claim); *see also Celotex Corp.*, 477 U.S. at 324 ("We do not mean

that the *nonmoving party* must produce evidence in a form that would be admissible at trial in order to avoid summary judgment" (emphasis added)).

Accordingly, the Ninth Circuit consistently holds that a non-movant's hearsay evidence may establish a genuine issue of material fact precluding a grant of summary judgment. *See Fraser*, 342 F.3d at 1036-37; *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29 (9th Cir. 2001) (reasoning that, at summary judgment in an employment discrimination suit, a plaintiff's declaration that a school official "did make [an inflammatory] statement would be enough to establish a genuine issue of fact" despite concerns over hearsay and double hearsay). Thus, "[m]aterial in a form not admissible in evidence may be used to *avoid* . . . summary judgment[.]" *Tetra Techs., Inc. v. Harter*, 823 F. Supp. 1116, 1120 (S.D.N.Y. 1993) (emphasis in original)).

Additionally, "unlike objections to foundation and hearsay, objections that evidence is not relevant or is misleading are superfluous at the summary judgment stage." *Quanta Indem. Co. v. Amberwood Dev. Inc.*, No. CV-11-01807-PHX-JAT, 2014 WL 1246144, at *2–3 (D. Ariz. Mar. 26, 2014) (internal quotation marks and citations omitted). "'Objections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself' and are thus 'redundant' and unnecessary to consider here." *Patterson v. Reliance Standard Life Ins. Co.*, 986 F. Supp. 2d 1140, 1144 (C.D. Cal. 2013) (quoting *Burch*, 433 F. Supp. 2d at 1119).

## III.   PLAINTIFF'S EVIDENTIARY OBJECTIONS

Plaintiff asserts several evidentiary objections in her Response. The Court addresses each in turn. Any objections not addressed below are omitted because the objected-to evidence was not necessary to the Court's determinations.

Plaintiff first objects to Dr. Patel's statement in his AMB complaint that nursing staff working with plaintiff reported Plaintiff as "behaving erratically" as hearsay. (Doc. 97 at 2). However, Defendant argues that this statement is not hearsay because Defendant offers it not for its truth, but as to show Dr. Patel's purported knowledge when he filed his

1    AMB complaint. (Doc. 100 at 2). The Court agrees with Defendant and overrules this

2    objection for purposes of summary judgment.

3         Plaintiff also objects to the inclusion of the following evidence under Federal Rule

4    of Evidence ("FRE") 401 and 403: that an unrelated individual filed a separate AMB

5    complaint against Plaintiff for unrelated conduct, namely her attempts to get a patient to

6    purchase whippets. (Doc. 97 at 2). Defendant argues that this evidence is both relevant and

7    highly probative because it relates to whether Defendant's statements alone impacted

8    Plaintiff's ability to obtain employment. (Doc. 100 at 2). The Court finds this evidence

9    relevant and that the probative value outweighs the prejudice and thus the objection is

10   overruled.

11        Plaintiff next objects to the following from Plaintiff's testimony based on lack of

12   personal knowledge: (1) that the AMB conducted an independent investigation, and (2)

13   that she "assume[d]" Defendant required the same documentation from Plaintiff that it

14   requires from all applicants. (Doc. 97 at 2). Examining the record, the Court finds no reason

15   to conclude that Plaintiff was not testifying as to her personal knowledge in her testimony

16   (1). (*See* Doc. 95-1 at 200). Thus, the Court overrules Plaintiff's objection as to Plaintiff's

17   testimony (1). To the extent that testimony (2) is inadmissible under FRE 602, Defendant

18   has provided other admissible evidence that establishes the same fact with greater certainty.

19   Thus, even excluding statement (2) of Plaintiff, Defendant has produced evidence to

20   support that fact.

21        Plaintiff also objects to the AMB medical consultant's report itself under FRE 401

22   and 403, and she objects to Defendant's use of statements within the report on various

23   evidentiary grounds: FRE 403, 602, 701/702,[4] 801, and 1002. (Doc. 97 at 2). Defendant

24   asserts that this report and the statements within it are being used for the limited purpose

25   of refuting Plaintiff's assertion that Defendant knew its statements to the AMB were

26   false—not as expert testimony or for its truth. The Court finds the report and statements

27   within it to be relevant, and the probative value outweighs the prejudice. The Court thus

28   ─────────────
[4] Plaintiff does not specify FRE 701/702 but discusses expert opinion issues pertaining to
this evidence, so the Court has supplied the relevant rules.

1   overrules Plaintiff's objection to Defendant's use of this report for this limited nonhearsay

2   purpose at summary judgment.

3   **IV.   DISCUSSION**

4       **A. Plaintiff's Title VII Claim (Count I)**

5       Plaintiff first asserts a claim against Defendant under Title VII of the Civil Rights

6   Act of 1964. (Doc. 12 at 6). In Defendant's Motion, Defendant asserts the following: (1)

7   Plaintiff is not an employee of Defendant and thus not protected under Title VII, (2) at least

8   some conduct giving rise to Plaintiff's cause of action under Title VII occurred outside of

9   the statute of limitations period, and (3) Plaintiff's claim fails on the merits.

10       **i.   Whether Plaintiff is an employee or independent contractor**

11       Defendant first argues that because Plaintiff was an independent contractor, not an

12   employee of Defendant, Title VII does not apply to Plaintiff, and thus Plaintiff's claim is

13   barred. (Doc. 95 at 9–10).

14       Ultimately, whether a hired person is an employee or independent contractor is a

15   question of law the Court must decide.  *Henry v. Adventist Health Castle Med. Ctr.*, 970

16   F.3d 1126, 1130 (9th Cir. 2020) ("Whether an individual is an employee under Title VII is

17   a question of law, assuming the material facts are undisputed."); *Harris v. Vector Mktg.*

18   *Corp.*, 656 F. Supp. 2d 1128, 1136 (N.D. Cal. 2009) ("Under federal law . . . [t]he existence

19   and degree of each factor [regarding the status of a person as an independent contractor or

20   employee] is a question of fact while the legal conclusion to be drawn from those facts—

21   whether workers are employees or independent contractors—is a question of law."). Here,

22   the material facts regarding most of the factors are undisputed.  Where they are in dispute,

23   the Court has considered them in the light more favorable to Plaintiff.

24       Determining whether an individual is an employee or independent contractor for

25   Title VII purposes requires this Court to evaluate "the hiring party's right to control the

26   manner and means by which the product is accomplished." *Nationwide Mut. Ins. v. Darden*,

27   503 U.S. 318, 323 (1992). *Darden* lists a non-exhaustive set of factors to consider when

28   making this inquiry, which includes the following: (1) the skill required, (2) source of

instrumentalities and tools, (3) location of the work, (4) duration of the relationship between the parties, (5) whether the hiring party has the right to assign additional projects to the hired party, (6) extent of the hired party's discretion over when and how long to work, (7) method of payment, (8) hired party's role in hiring and paying assistants, (9) whether the work is part of the regular business of the hiring party, (10) provision of employee benefits, and (11) tax treatment of the hired party.

In the physician-hospital context, the Ninth Circuit has noted some key differences in how courts should consider the *Darden* factors. First, "'[t]he level of skill required, location of the work, and source of equipment and staff are not indicative of employee status because all hospital medical staff are skilled and must work inside the hospital using its equipment." *Henry v. Adventist Health Castle Med. Ctr.*, 970 F. 3d 1126, 1131–32 (9th Cir. 2020) (quoting *Alexander v. Avera St. Luke's Hosp.*, 768 F. 3d 756, 763 (8th Cir. 2014)). Second, hospitals must subject physicians to regulations to maintain the hospital's professionally mandated standards of care. *Id.* at 1132. Thus, such regulations are similarly not indicative of employee status. *Id.*

Thus, the first three factors do not weigh significantly in either direction here because Plaintiff was a physician working in a hospital setting. The duration of the relationship weighs in favor of Defendant, as each reappointment was for a term of just one year. Defendant could and did assign additional work to Plaintiff, which weighs in Plaintiff's favor. (Doc. 97-2 at 6).

Regarding the sixth factor, Pioneer's contract with Defendant indicated that physicians working at Defendant's hospitals were expected to dedicate all or substantially all of their professional efforts to the hospital. (Doc. 97-8 at 2). However, physicians were not prohibited from having their own practice; in fact, Plaintiff had her own small practice that she ran while working at Defendant's hospital. (Doc. 95-1 at 110–11). Plaintiff's failure to make money at her own practice, while relevant to distinguish this case's facts from those in *Henry*, does not carry much weight considering the remaining facts. Additionally, although Plaintiff did not have discretion over when and how long to work,

neither did Defendant—Pioneer was responsible for all scheduling. (Doc. 95-1 at 23, 39). This factor therefore at most may weigh in favor of finding that Plaintiff was an employee of Pioneer; it cannot weigh in favor of Plaintiff being *Defendant's* employee.

Factors seven, eight, ten, and eleven weigh in favor of classification as an independent contractor. Defendant did not pay Plaintiff directly; instead, Pioneer operated its own billing system in which physicians input their own bills. (Doc. 95-1 at 17). Additionally, Plaintiff had no role in hiring and paying assistants. (Doc. 97 at 6). Neither Defendant nor Pioneer provided Plaintiff any benefits; moreover, Plaintiff herself alleges that there was at no time a contract between Defendant and Plaintiff. (*Id.* at 5, 6). Additionally, although not dispositive, Plaintiff's contract with Pioneer named her as an independent contractor—and Pioneer's contract with Defendant names Pioneer as an independent contractor. (Doc. 95 at 2). Finally, Plaintiff was classified as a 1099 worker for tax purposes. (Doc. 95-1 at 35). Pioneer did have W-2 physicians, but Plaintiff was not one of them. (*Id.*).

Lastly, although the ninth factor weighs in favor of Plaintiff's employee classification—Defendant's regular business is in the provision of health services—this factor carries little weight, as it is related to the first three factors which are less significant in the physician-hospital context.

Thus, having considered the factors the Court finds that as a matter of law Plaintiff was an independent contractor.  Independent contractors cannot bring a claim under Title VII and for this reason, Plaintiff's Title VII claims fails as a matter of law. *Adcock v. Chrysler Corp.*, 166 F. 3d 1290, 1292 (9th Cir. 1999). Although the Court has determined Plaintiff was an independent contractor, the Court will nonetheless consider Defendant's alternative arguments that Plaintiff's Title VII claim is barred by the statute of limitations and/or fail on the merits.

### ii.  Whether Plaintiff's claim is time barred

The Court turns to Defendant's argument that Plaintiff's Title VII claim should be barred at least as to some of Plaintiff's allegations because some of the alleged conduct

giving rise to Plaintiff's Title VII claim occurred prior to February 27, 2020. Title VII requires an aggrieved party to file a charge with the EEOC within 300 days of an adverse action *and* before filing an action in federal court. 42 U.S.C. §§ 2000e-5(e)(1), (f)(1). Defendant argues that Plaintiff did not file her EEOC charge until December 23, 2020, so two of the three alleged instances of discrimination should not be considered because they occurred more than 300 days before the EEOC charge. (Doc. 95 at 10).

Plaintiff has alleged the following three instances of discrimination: (1) on December 15, 2018, Defendant's failure to investigate her claim of sexual harassment; (2) on December 18, 2018, Defendant's filing of a fraudulent complaint (the AMB complaint); and (3) Defendant's failure to renew Plaintiff's physician appointment status. (Doc 12-2 at 2). Plaintiff argues that all three instances of conduct should be actionable because the three instances are part of a "'continuing violation' of Plaintiff's Title VII rights." (Doc. 97 at 7). Plaintiff asserts that there is substantial evidence that Defendant engaged in a series of related acts, and at least one of those acts occurred within the statutory time period. (*Id.*).

A cause of action accrues when "'the plaintiff has a complete and present cause of action.'" *Flynt v. Shimazu*, 940 F. 3d 457, 462 (9th Cir. 2019) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). In other words, the cause of action accrues when the plaintiff "knows or has reason to know of the actual injury." *Id.* (citing *Scheer v. Kelly*, 817 F. 3d 1183, 1188 (9th Cir. 2016)).

The continuing violations doctrine provides a mechanism by which a plaintiff may "'seek relief for events outside of the limitations period.'" *Bird v. Dep't of Human Servs.*, 935 F. 3d 738, 746 (9th Cir. 2019) (quoting *Knox v. Davis*, 260 F. 3d 1009, 1013 (9th Cir. 2001)). Two applications of the continuing violations doctrine traditionally exist: (1) a series of related acts, one or more of which falls within the required period ("serial acts"), or (2) maintenance of a discriminatory system both before and during the required period ("systematic"). *Id.* However, the United States Supreme Court ("SCOTUS") greatly limited application of the continuing violations doctrine, specifically as to the "serial acts" approach, in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

Based upon this SCOTUS decision, the Ninth Circuit has abrogated both the "serial acts" and "systematic" applications of the continuing violations doctrine, holding that it applies only in a limited exception for hostile work environment claims. *Bird*, 935 F. 3d at 746–48.

Plaintiff's "series of related acts" approach is therefore unpersuasive to the extent that Plaintiff attempts to base her cause of action on actions that were taken outside of the statutory period. However, the action taken after February 27, 2020—namely, Defendant's failure to renew physician appointment status—is not barred by the statute of limitations. Thus, the Court will evaluate the facts alleged to determine whether Plaintiff's claim fails on the merits.

### iii.  Merits of Plaintiff's Title VII claim against Defendant

When analyzing a Title VII claim, courts generally apply the *McDonnel Douglas* burden shifting framework. *Surrell v. Cal. Water Serv. Co.*, 518 F. 3d 1097, 1105 (9th Cir. 2008); *see also McDonnel Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, a plaintiff must establish a prima facie case of discrimination. *Id.*

Establishing a prima facie case of discriminatory failure to hire under Title VII requires a plaintiff to show the following elements: (1) the plaintiff belongs to a protected class; (2) the plaintiff was qualified for the job in question; (3) the plaintiff was subjected to an adverse employment action, in this case denied the job; and (4) the position remained open and the employer sought other similarly-qualified employees. *Id.* at 1105–06 (citing *McDonell Douglas*, 411 U.S. at 802).

Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory . . . conduct." *Surrell*, 518 F. 3d at 1106. If the defendant articulates such a reason, the burden then shifts back to the plaintiff to offer evidence that "'the employer's proffered nondiscriminatory reason is merely a pretext for discrimination.'" *Id.* (quoting *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F. 3d 1027, 1037 (9th Cir. 2005)). "To show pretext using circumstantial evidence, a plaintiff must put forward specific and substantial

1    evidence challenging the credibility of the employer's motives." *Vasquez v. County of L.A.*,

2    349 F. 3d 634, 642 (9th Cir. 2003).

3           To establish her prima facie case regarding Defendant's failure to reappoint her with

4    privileges, Plaintiff alleges the following facts: Plaintiff asked for additional time to locate

5    proof of CME completion, but Defendant refused and imposed an arbitrary deadline, and

6    that Plaintiff did provide proof of CME and Defendant refused to accept it. (Doc. 97 at 8).

7    Plaintiff attributes her failure to timely submit the proof of CME completion to delays and

8    processing issues due to the COVID-19 pandemic. (Doc. 97-2 at 7). Plaintiff additionally

9    argues that Defendant announced that it was asking physicians to take on more workload

10   due to the COVID-19 pandemic, but still did not call Plaintiff back. (*Id.* at 9).

11          Plaintiff's prima facie claim fails because Plaintiff has not shown that she was

12   qualified for the job, and she additionally has failed to provide evidence that Defendant is

13   not similarly stringent about requiring timely proof of CME completion with other

14   similarly situated physicians. Further, Plaintiff's allegations that the deadline Defendant

15   imposed was "arbitrary" and that Plaintiff provided the proof of completion, but Defendant

16   refused to accept it are not supported by the record. Instead, Defendant's deadline was per

17   Defendant's Credentials manual, (Doc. 97-13 at 2), and Plaintiff's testimony establishes

18   that she did not provide the proof of completion. (Doc. 95-1 at 106). Instead, Plaintiff

19   provided proof of purchase of a 31-day trial for the relevant CME course dated January 4,

20   2019—well before the COVID-19 pandemic began—and yet did not have any proof of

21   completion to provide when she was applying for reappointment in June 2020—over a year

22   later, and after her 31-day trial expired.[5] (Doc. 97-12 at 5).

23          Thus, Plaintiff has not established a prima facie case of discrimination under Title

24   VII because she has not established that she was qualified for the role she sought.

---

[5] Upon examining the record, the Court notes that Plaintiff may have had access to complete her CME courses until as late as the end of 2019, as she received an email from the same CME course informing her that "Time is Running Out!" to complete the course on December 21, 2019. (Doc. 97-12 at 6). This does not change the Court's conclusion, as this date is still well before both the outbreak of COVID-19 and the time at which Plaintiff's proof of CME was due. Plaintiff had applied for and received reappointment from Defendant before, so she was aware of the requirements Defendant imposes for renewal.

1   Defendant clearly articulated that timely submission of proof of CME is a prerequisite
2   qualification for the role, and there is no evidence that Defendant makes exceptions for
3   other similarly qualified employees. Accordingly, Defendant is alternatively entitled to
4   summary judgment on the merits of Plaintiff's Title VII claim.

5              **B. Plaintiff's Libel Per Se Claim (Count II)**

6              Plaintiff next asserts a libel claim against Defendant, in particular alleging libel per
7   se, arising out of the statements made in Defendant's AMB complaint. Defendant argues
8   both that Plaintiff's libel per se claim is time barred and that, even if the claim is not time
9   barred, it fails on the merits because Defendant acted under a qualified privilege.

10             **i.  Whether Plaintiff's libel per se claim is time barred**

11             As to Plaintiff's libel claim, Defendant argues that Plaintiff's libel claim is barred
12  by application of A.R.S. § 12-541(1), which requires that actions for libel or slander be
13  commenced within one year after the cause of action accrues. Defendant contends that a
14  cause of action for libel accrues at the time the defamatory statement is first published and
15  a plaintiff becomes aware of the publication. (Doc. 95 at 13; Doc. 100 at 8). Accordingly,
16  Defendant asserts that Plaintiff's cause of action accrued in December 2018, when Plaintiff
17  learned of, and knew the contents of, Defendant's allegedly defamatory statements in its
18  complaint made to the AMB. (Doc. 95 at 13).

19             By contrast, Plaintiff argues that the discovery rule should apply, in which case a
20  cause of action does not accrue until the plaintiff knows or should know the underlying
21  facts of the action. (Doc. 97 at 11). Thus, Plaintiff asserts that her cause of action did not
22  accrue until July 2020, when she became aware of alleged discrepancies between
23  Defendant's complaint to the AMB and the hospital records corresponding to the patients
24  mentioned in the complaint. (*Id.* at 12). Plaintiff contends that she therefore timely filed
25  after "her discovery that Defendant's AMB complaint was not privileged." (*Id.* at 11).

26             The Court agrees with Defendant that Plaintiff's cause of action for libel accrued in
27  December 2018 and thus is time barred. As discussed above, a cause of action accrues
28  when a plaintiff "knows or has reason to know of the actual injury." *Flynt*, 940 F. 3d at 462

(citing *Scheer*, 817 F. 3d at 1188). The inquiry is not whether a plaintiff knew of all the evidence she may or may not have to support her claim, or whether a plaintiff discovered evidence to overcome a defendant's potential defenses.[6] Instead, the inquiry is whether a plaintiff knew she had been injured. Moreover, the discovery rule delays accrual of a plaintiff's cause of action when the plaintiff does not or should not yet know of the facts underlying the cause of action; it "only applies when the injury is difficult to detect." *MCK Exports, LLC v. Wal-Mart Stores, Inc.*, No. CV 13-156-TUC-DCB, 2014 WL 3700877, at *5 (D. Ariz. July 25, 2014) (citing *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of America*, 898 P. 2d 964, 968 (Ariz. 1995)).

Plaintiff testified in her deposition she saw the AMB complaint in December 2018, within a few days after Defendant filed it. (Doc. 95-1 at 77–78). Thus, she learned that Defendant had made the allegedly false statements at that time. Plaintiff personally experienced the events that Defendant allegedly fabricated in its AMB complaint. Therefore, she did not need access to medical records—the alleged *proof* that the statements in the complaint were false—to have *knowledge* of their alleged falsity and thus knowledge of the injury. The discovery rule is inapplicable here because Plaintiff had knowledge of the underlying facts as of December 2018. Although discovery was necessary to access evidence to *support* her allegations, it was not necessary to determine whether Plaintiff had a cause of action in the first place.

Therefore, the Court concludes that Plaintiff's libel claim is barred by application of A.R.S. § 12-541(1). Although the Court has made this determination, the Court nonetheless addresses Defendant's alternative argument that Plaintiff's libel per se claim fails on the merits.

---

[6] At oral argument, Plaintiff urged this Court to use the date she received the files as the date the statute of limitations began to run, not because that is the date she learned of the libel, but because that is the date she claims to have learned Patel acted with actual malice. However, as discussed below, the Court finds that even assuming Patel failed to investigate, such failure might amount to negligence, but not actual malice.  Thus, even assuming without deciding for purposes of this Order that the date a Plaintiff discovers evidence to overcome an affirmative defense triggers the statute of limitations, in this case, Plaintiff has no evidence to overcome the affirmative defense.

### ii. Merits of Plaintiff's libel per se claim against Defendant

Defendant argues that even if Plaintiff's claim does not fail procedurally, it fails on the merits due to Defendant's qualified privilege in submitting the AMB complaint. The Court agrees.

To establish a prima facie claim for defamation, a plaintiff must show the following elements: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting to at least negligence on the part of the publisher; (4) special harm or actionability irrespective of special harm. *Athans v. Starbucks Coffee Co.*, No. CV-06-1841-PHX-DGC, 2007 WL 899130, at *2 (D. Ariz. Mar. 23, 2007) (citations omitted). In Arizona, "written or visual communications that on their face falsely tend to impeach one's honesty, integrity, or reputation" are libel per se—and actionable irrespective of special harm. *Dealer Computer Servs., Inc. v. Fullers' White Mountain Motors, Inc.*, No. CV07-00748-PCT-JAT, 2008 WL 4628448, at *3–*4 (D. Ariz. Oct. 17, 2008).

Plaintiff argues that the following of Defendant's statements are defamatory: (1) that Plaintiff "improperly discharged a patient," (2) that Plaintiff provided an "unsafe dosage of insulin to a patient," and (3) that Plaintiff was "under the influence of drugs on December 15, 2018." (Doc. 95 at 5). Defendant argues that it is protected from suit by a qualified privilege, which it did not abuse. (Doc. 95 at 13–14).

Qualified privilege is a defense to a defamation action based on "the social utility of protecting statements required to be made in response to a legal, moral, or social duty." *Green Acres Tr. v. London*, 688 P. 2d 617, 624 (Ariz. 1984) (citations omitted). Arizona law establishes a two-part analysis: (1) whether a privileged occasion arose; and (2) whether a defendant abused said privilege. *Id.* Relevant to this action, Arizona law imposes a duty on physicians to report to the board "any information that appears to show that a doctor of medicine . . . is or may be guilty of unprofessional conduct or is or may be mentally or physically unable safely to engage in the practice of medicine." A.R.S. § 32-1451(A). Thus, a privileged occasion arises when such circumstances exist.

Abuse of a qualified privilege is established by showing, by clear and convincing evidence, one of the following: (1) actual malice, meaning knowledge of falsity or serious doubts as to truth; or (2) excessive publication. *Advanced Cardiac Specialists, Chartered v. Tri-City Cardiology Consultants, P.C.*, 214 P. 3d 1024, 1029 (Ariz. Ct. App. 2009). If a plaintiff fails to produce evidence of either, a defendant did not abuse the privilege as a matter of law. *Id.*

In this case, a privileged occasion certainly arose—the reports of Plaintiff that Dr. Patel received appear to show impairments that Dr. Patel must report to the AMB. Second, Plaintiff alleges that Defendant "knew the statements were false, and/or acted with reckless disregard for whether they were false," but cites to nowhere in the record to support this allegation. (Doc. 97 at 12). Similarly, Plaintiff alleges that Defendant failed to follow a peer review process before submitting the AMB complaint, but again cites no evidence to prove such allegations. Moreover, mere failure to investigate or conduct a peer review process constitutes, at most, negligence, which is not the standard when a privilege exists. *Advanced Cardiac Specialists*, 214 P. 3d at 389. Thus, as a matter of law, Plaintiff has failed to show by clear and convincing evidence that Defendant abused its privilege. Defendant is therefore entitled to summary judgment for this alternative reason.

## C.  Plaintiff's Tortious Interference Claims (Counts III and IV)

Plaintiff asserts her tortious interference claims acknowledging that such claims may go forward only if she is determined to be an independent contractor (*see* Part IV.A.i., *supra*). The Court thus analyzes Plaintiff's tortious interference claims because Plaintiff has been found to be an independent contractor. Should Plaintiff be considered an employee, her tortious interference claims would fail as a matter of law.

Plaintiff alleges that Defendant tortiously interfered with her contract with Pioneer by filing its allegedly false AMB complaint. (Doc. 12 at 9). Similarly, Plaintiff alleges that Defendant intentionally interfered with Plaintiff's prospective economic relations with Pioneer by filing its AMB complaint. (*Id.* at 10). Plaintiff alleges that Defendant's AMB complaint was a substantial factor in causing both Plaintiff's inability to perform her duties

1   under her contract with Pioneer and the disruption of Plaintiff's economic relationship with

2   Pioneer. (*Id.* at 9–10).

3             **i.  Whether Plaintiff's tortious interference claims are time barred**

4         As to Plaintiff's tortious interference claims, Defendant argues that Plaintiff's

5   claims are barred by A.R.S. § 12-541(4) (Doc. 95 at 14–15), which sets a two-year statutory

6   period in which to file a cause of action for claims of tortious acts including tortious

7   interference. *See Ball v. Shannon*, No. 1 CA-CV 21-0095, 2023 WL 3120544 (Ariz. Ct.

8   App. Apr. 27, 2023) (finding A.R.S. § 12-541 applicable to tortious interference claims).

9   Defendant argues that Plaintiff's tortious interference claim, like Plaintiff's libel claim,

10  arises out of the AMB complaint, which she saw in December 2018. (Doc. 95 at 14–15).

11  Thus, Plaintiff's cause of action would have accrued in December 2018, more than two

12  years before Plaintiff ultimately filed this action. (*Id.*).

13        Plaintiff argues that her tortious interference claims should not be barred because,

14  like Plaintiff's libel claim, Plaintiff's causes of action for tortious interference did not

15  accrue until July 2020. (Doc. 97 at 14).

16        A cause of action for tortious interference accrues when "the plaintiff knew or

17  reasonably should have known of the intentional interference with the plaintiff's business

18  expectancy, resulting in its termination; and the plaintiff realized he or she was damaged

19  by that termination." *Dube v. Likins*, 167 P. 3d 93, 99 (Ariz. Ct. App. 2007) (citations

20  omitted). Thus, Plaintiff's cause of action for tortious interference accrued not when she

21  learned of the AMB complaint, but when her contractual relationship and/or business

22  expectancy with Pioneer was impacted and she learned of such damage done to her.

23  Plaintiff's relationship with Pioneer appears to have degraded around March or April 2020,

24  when Pioneer declined to put Plaintiff back on the work schedule. (Doc. 95 at 6–7). This

25  was within the statute of limitations, as Plaintiff filed her cause of action on May 3, 2021.

26  (Doc. 1). Plaintiff's tortious interference claims therefore are not barred by the applicable

27  statute of limitations and must be considered on the merits.

28

1
2

### ii. Merits of Plaintiff's tortious interference claims against Defendant

3    To establish a prima facie case of tortious interference, a plaintiff must show the
4  following: (1) existence of a valid contractual relationship or business expectancy; (2) the
5  interferer's knowledge of the relationship or expectancy; (3) intentional interference
6  inducing or causing a breach or termination of the relationship or expectancy; and (4)
7  resultant damage to the party whose relationship or expectancy has been disrupted. *Wallace*
8  *v. Casa Grande Union High Sch. Dist. No. 82 Bd. Of Governors*, 909 P. 2d 486, 494 (Ariz.
9  Ct. App. 1995) (citation omitted). Additionally, the interferer must have interfered in a
10  manner that is improper "as to motive or means." *Wagenseller v. Scottsdale Memorial*
11  *Hospital*, 710 P. 2d 1025, 1043 (Ariz. 1985).

12    Defendant points out, and the Court agrees, that Plaintiff has failed to establish
13  sufficient evidence for a reasonable jury to conclude that Defendant's conduct was
14  "improper" in some way. Arizona courts analyze impropriety using the following factors:
15  (1) the nature of the actor's conduct, (2) the actor's motive, (3) the interests that were
16  defeated, (4) the interests that the actor sought to advance, (5) the social interests involved,
17  (6) the proximity of the actor's conduct to the interference, and (7) the relationship between
18  the parties. *Employers Reinsurance Corp. v. GMAC Ins.*, 308 F. Supp. 2d 1010, 1015 (D.
19  Ariz. 2004). "A reasonable, good faith belief in the legality of the conduct weighs against
20  a finding of 'improper' conduct." *Id.* at 1016 (citing *G.M. Ambulance and Medical Supply*
21  *Co., Inc. v. Canyon State Ambulance, Inc.*, 739 P. 2d 203 (Ariz. Ct. App. 1987)).

22    In this case, Defendant merely submitted a report, which Dr. Patel testified he
23  believed he had a duty to do, upon receiving reports of Plaintiff's conduct. Plaintiff has
24  provided no evidence, aside from her own speculation, that Defendant had any motive for
25  submitting the AMB complaint other than acting upon concerning allegations made by its
26  employees. Moreover, the interest of protecting patients from potentially harmful doctors
27  is a significant social interest, especially considering Plaintiff's prior incidents and
28  placement in the PHP. Therefore, Plaintiff has failed to create a disputed issue of fact as to

the element of "improper motive or means" as established by *Wagenseller*.

The Court also finds that Plaintiff has failed to establish an intentional interference that *induced* or *caused* the damages suffered. A plaintiff must show that an interferer's conduct was a "significant cause," *Caudle v. Bristow Optical Co, Inc.*, 224 F. 3d 1014, 1024 (9th Cir. 2000), or even a "but-for" cause, of the terminated contract or business expectancy. *Skydive Arizona, Inc. v. Quattrocchi*, No. CV 05-2656-PHX-MHM, 2009 WL 6587892, at *15 (D. Ariz. Feb. 2, 2009) (citing *Southern Union Co. v. Southwest Gas Corp.*, 180 F. Supp. 2d 1021, 1050 (D. Ariz. 2002)).

As evidence of intent, Plaintiff points to Defendant's general familiarity with Pioneer's business practices and knowledge of Plaintiff's job duties. (Doc. 97 at 15). Plaintiff argues that such familiarity, coupled with Defendant's actions in "abruptly removing Plaintiff from the observation unit, suspending her privileges at [Defendant's hospitals], removing her ability to complete patient charts and records, falsely reporting to the [AMB]," and other actions demonstrate both intent and causation. (*Id.*).

However, Defendant's mere awareness that Plaintiff had a contract and/or economic relationship with Pioneer and knowledge of Plaintiff's job responsibilities does not establish intent to interfere with said contract and/or economic relationship. Moreover, the AMB received two other complaints against Plaintiff, both of which did not originate from Defendant. The AMB had disciplined Plaintiff for conduct separate from the conduct that Defendant allegedly fabricated. Finally, the AMB consultant investigated Plaintiff and concluded that Plaintiff had knowingly deviated from the parameters set up by the PHP.[7] Considering these circumstances, it cannot be said that Defendant's AMB complaint is a "but-for," or even a "significant," cause of Plaintiff losing her contract and/or prospective economic relations with Pioneer.

Thus, as the Court finds that Plaintiff's tortious interference claims fail on the merits, summary judgment on these claims is appropriate.

---

[7] The Court uses this statement from the AMB consultant not for its truth, but for its effect on Pioneer, consistent with the purpose for which the Court overruled Plaintiff's evidentiary objections.

**D. Punitive Damages**

Additionally, Plaintiff's Complaint (Doc. 12) seeks punitive damages for Counts I–IV. However, as the Court finds summary judgment appropriate for each of Counts I–IV, the Court need not reach this issue.

**V.     CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 95) is granted.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment in favor of Defendant and against Plaintiff; Plaintiff shall take nothing.

Dated this 20th day of September, 2023.

James A. Teilborg
Senior United States District Judge